**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KIM SHERWIN, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | |
| *v.* | |
| SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kim Sherwin ("Plaintiff" or "Sherwin") brings this class action complaint ("Complaint") against Defendant Samsung Electronics America, Inc., ("Defendant" or "Samsung") based on the defective design and/or manufacturing of one of its television remote controls. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.      In 2011 Samsung introduced a novel feature for its line of "smart" internet-connected televisions ("Smart TVs"): a two-sided remote control built with a full-sized keyboard ("Qwerty Remote"). One side of the remote incorporates traditional remote features to toggle the Smart TV's power, channel, volume, and other similar and simple functions.

2.      And on the remote's other side sits a full-sized "QWERTY" keyboard (*i.e.*, the layout found on a typical computer keyboard), a small display, and a unique directional pad (similar to a laptop computer's track pad). Such features transform Smart TVs into advanced

electronic devices, not unlike computers, that let users browse and install dozens of applications, surf the web with ease, and even send communications across the internet.

3.      While traditional television remotes contain few components, Samsung's new remote is built around a modern wireless communication technology, known as Bluetooth, and other integrated circuits to control the advanced functionality. Yet, these added features require additional power. Instead of following industry norms by using a robust, rechargeable battery to power the device, Samsung defectively designed and manufactured the remote's power supply to use four common AAA batteries that are housed in a sealed, recessed compartment within the remote.

4.      Samsung's defective power supply leads to excessive heat and premature device failure. Worse, Samsung's defect can cause the remote's batteries to catastrophically fail and leak their harmful acidic contents. Samsung itself previously warned purchasers about its other remotes regarding the "leakage of [a battery's] internal liquid" "may cause fire, personal injury or damage."[1] In so doing, Defendant acknowledged the dangers presented by leaking batteries in its products.

5.      Unfortunately, Samsung refuses to acknowledge, fix, or even warn of the safety defect in its Qwerty Remotes, leaving thousands of individuals with broken and dangerous remotes and thousands more who still use remotes that are prone to leaking a hazardous fluid. Accordingly, this putative class action lawsuit seeks (i) to prevent Defendant from continuing to sell the remotes, and (ii) damages for those who already purchased them.

---

[1]      *LFD Display User Manual, ED65C ED75C,* http://downloadcenter.samsung.com/content/UM/201306/20130612200837441/BN46-EDC_ENG.pdf (last visited July 19, 2016).

## PARTIES

6.      Plaintiff Kim Sherwin is a natural person and citizen of the State of Illinois.

7.      Defendant Samsung Electronics America, Inc., is a corporation existing under the laws of the State of New York with its principal place of business located at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Samsung does business throughout the United States and the State of Illinois, including in this District, and is registered to do business in this State (entity number 51835026).

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts business in Illinois and because the events giving rise to this lawsuit occurred, in substantial part, in Illinois.

10.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District. 28 U.S.C. § 1391(b)(2). Venue is additionally proper because Plaintiff resides within this District, and Defendant is registered to, and regularly does, conduct business in this District, including by entering into consumer transactions.

## FACTUAL BACKGROUND

**I.      A Brief Overview of Samsung and its Qwerty Remotes.**

11.      Samsung is one of the largest manufacturers of "Smart TVs," which offer built-in

internet connectivity, allow for web browsing, the installation of applications, and other advanced features. Samsung's Smart TVs command a premium price of up to $200 over TVs without any "smart" capabilities.[2]

12. In step with their added features, Samsung's Smart TVs became harder to control with traditional television remotes. In response, Samsung developed an advanced remote control for its line of Smart TVs. But in Samsung's haste to design a new remote, it developed a product plagued with a potentially hazardous defect.

13. Starting in at least 2011, Samsung began selling the BN59-01134B remote ("Qwerty Remote") with some of its Smart TVs, such as the $1,700 Samsung UN55D7000 55-inch Smart TV.[3] Samsung increased the price of its Smart TVs that included the Qwerty Remote, meaning consumers paid a premium over other televisions to obtain the Remote.[4]

14. According to Samsung, the Qwerty Remote would be "perfect for social media sites, web browsing and using Smart Hub [*i.e.*, the Smart TVs' main user interface]." Indeed,

---

[2] *Smart TVs: Not Such A Smart Idea | Techdirt*, https://www.techdirt.com/blog/innovation/articles/20120221/03352017827/smart-tvs-not-such-smart-idea.shtml (last visited July 19, 2016) (stating that the 'smart' factor" of Smart TVs "runs between $70 and $200.").

[3] *Amazon.com: Samsung UN55D7000 55-Inch 1080p 240 Hz 3D LED HDTV (Silver) [2011 MODEL] (2011 Model): Electronics*, http://www.amazon.com/Samsung-UN55D7000-55-Inch-1080p-Silver/dp/B004O6MN7O (last visited July 19, 2016).

[4] For example, Samsung's UN60D6400 Smart TV did not include the Qwerty remote and had a price of $2,697.99 in January 2012—$300 less than the Samsung UN60D7000 that included the remote at a price of $2,997. *See UN60D6500 - Samsung 60" Series 6 LED Black Flat Panel LCD HDTV at Abt*, http://web.archive.org/web/20120113111612/http://www.abt.com/product/55144/Samsung-UN60D6500.html (last visited July 19, 2016); *UN60D7000 - Samsung 60" 3D Series 7 LED Silver Flat Panel HDTV at Abt*, http://web.archive.org/web/20120116131349/http://www.abt.com/product/53498/Samsung-UN60D7000.html (last visited July 19, 2016). Some time later, Samsung also sold individual Qwerty Remotes for a price of $121.67 or more, perhaps anticipating that consumers would have to regularly replace the defective remotes. *See Amazon.com: Samsung Remote Control - BN59-01134B: Electronics*, http://www.amazon.com/Samsung-BN59-01134B-Remote-Control/dp/B005DNSCWM (last visited July 19, 2016).

"the Samsung Qwerty Flip Remote, maximize[s] your Samsung Smart TV fun" and allows consumers to "get[] the most from the Samsung Smart TV experience." [5]

15.     The Qwerty Remote has a distinct two-sided design. On one side sits the buttons common to ordinary television remotes, such as a number pad to enter television channels, input-select buttons, and volume and channel toggle buttons. *See* Figure 1.



(**Figure 1.**)

16.     On the other side sits an additional number pad, a full "QWERTY" keyboard (*i.e.*, the standard keyboard layout for computers and smart phones), a small, single-line display, and a directional pad, that operates in a similar fashion to a laptop computer's touchpad, amongst other things. *See* Figure 2.

---

[5]     *SAMSUNG TV | Home of Samsung Smart TV | Hints and Tips*, http://web.archive.org/web/20120313010337/http://www.samsung.com/au/tv/my-hub/hints-and-tips/qwerty-remote.html (last visited July 19, 2016) (describing the RMC-QTD1 remote that is, on information and belief, functionally equivalent to the BN59-01134B remote).



(**Figure 2.**)

17.     These additional buttons made interacting with Samsung's Smart TVs an easier task. Although Samsung's Smart TVs allowed consumers to connect to the internet and browse the web even without the Qwerty Remote, to do so they had to type addresses or search terms using an on-screen virtual keyboard, which is widely known to be a time-consuming and frustrating process.[6] The Qwerty Remote, however, made "for easy typing of search terms, Twitter updates, etc,"[7] and greatly improved the ease of which consumers could search for and install Smart TV applications, such as Netflix, Facebook, or Pandora.[8] For this reason, Samsung Smart TVs sold with Qwerty Remotes command a premium over equivalent models sold without Qwerty Remotes, and Qwerty Remotes themselves are priced higher than standard infrared remotes.

18.     Without functioning Qwerty Remotes, then, Samsung's Smart TVs lose a substantial part of the functionality for which consumers paid a premium. Unfortunately, as

---

[6]     *What is a Smart TV? - Amazon.com*,
http://web.archive.org/web/20140204152729/http://www.amazon.com/gp/feature.html?ie=UTF8&docId=1001072461 (last visited July 19, 2016) ("If you intend to use your TV for serious web surfing, look for the ability to pair with a wireless keyboard made especially for smart TVs, a fairly large remote control with a QWERTY keyboard, or a smartphone or tablet companion app you can use for typing.")

[7]     *Amazon.com: Samsung UN55D7000*, note 3, *supra.*

[8]     *Id.*

explained more fully below, Samsung designed and/or manufactured the Qwerty Remotes with a defect that caused premature failure and a safety hazard.

## II.   Samsung Designed and/or Manufactured Its Remotes With a Hazardous Defect.

19.     The addition of the QWERTY keyboard and other keys required Samsung to build the Qwerty Remote with a new method of communicating between the remote and the TV. But while Samsung designed the remote around the new communications technology, it included an antiquated power supply. Samsung chose not to design the remote around a modern, robust battery, but instead defectively shoehorned four AAA-sized batteries into the middle of the remote. Samsung's defect has caused Qwerty Remotes to generate excessive heat, prematurely fail, and cause their batteries to leak a dangerous substance.

### A.     *The Qwerty Remotes Use Bluetooth to Connect to Samsung's Smart TVs.*

20.     For decades, TV remotes have relied on infrared technology to control televisions—point the remote at the TV, press a button, and the remote flashes invisible light to the TV's receiver. For single button presses, infrared works well. But Samsung's Qwerty Remote was designed to send entire words (*e.g.*, for searches or communications) to Smart TVs—a task too complicated for infrared.

21.     As such, Samsung chose to supplement infrared in its Remote with "Bluetooth" technology. Bluetooth is a modern, short-range communication technology that wirelessly connects two devices and allows for the transmission of an order of magnitude more information than infrared. One of the most ubiquitous uses of Bluetooth is in hands-free headsets for mobile phones.

22.     To use Bluetooth technology in the Qwerty Remote, Samsung had to design an entirely new remote, including many more integrated circuits and electronics compared to a

traditional infrared remote.

23. By adding integrated circuits in the Remote for Bluetooth and other features, Samsung increased the amount of power the remote would draw. Devices that use Bluetooth typically are powered by robust and rechargeable batteries, such as "lithium-ion" batteries. Conversely, infrared remotes are typically powered by one or two common AAA or AA batteries because of their minute power needs—power is drained only when buttons are pressed and the infrared light is illuminated.

24. Despite modern internals, Samsung didn't build its Qwerty Remote with a rechargeable, robust battery, as would be standard for a Bluetooth device. Instead, Samsung powered the Qwerty Remote with four AAA batteries, essentially carrying over the design from infrared remotes, likely to save costs.

25. But with normal use, the Qwerty Remote's batteries must be replaced in just a few weeks because the remote's Bluetooth and other advanced technology draws substantially more power. More importantly, Samsung's decision to power the remote with AAA batteries has other drawbacks that, as explained below, can lead to the batteries leaking a hazardous substance.

### B. *The Qwerty Remote's Battery Compartment is Defective.*

26. Samsung ignored convention by powering its Qwerty Remote with AAA batteries instead of a built-in, rechargeable battery. Making matters worse, the compartment that houses the AAA batteries is defective, causing excessive heat that leads to the remote prematurely failing and its batteries leaking.

27. Television remotes (and generally all consumer devices) with replaceable batteries are invariably designed with battery compartments placed near the exterior of the

device. This location, combined with a removable cover, facilitates the quick replacement of discharged batteries and aids in the dissipation of heat generated by the sustained use of batteries.

28.     Samsung designed its Qwerty Remote's battery compartment to be sandwiched in the center of the remote. With that design, the user removes a plastic cover, unlatches a battery tray, and slides the tray out to remove discharged batteries. The user then loads the tray with fresh batteries, slides the tray back into the remote, and installs the plastic cover to replace the batteries.

29.     But by placing the batteries—which are in continuous use due to the operation of the Bluetooth technology—in the center of the remote, Samsung created the necessary conditions for the Remote and its batteries to overheat. The Remote's batteries and two control boards generate heat that would otherwise dissipate if they were placed near the exterior of the remote. Samsung's design and manufacturing process, though, resulted in blocked airflow, causing the Qwerty Remote to retain heat that may cause the Qwerty Remote's circuits to prematurely fail.

30.     Worse, the Qwerty Remote's battery compartment has a propensity to cause its Remote's batteries to fail and leak a hazardous liquid. Non-party Energizer Battery Manufacturing, Inc., maintains a "product safety datasheet" for alkaline batteries where it warns of the "hazards" of leaking batteries.[9] Energizer states that the "contents of an open battery can cause respiratory irritation," "skin irritation and/or chemical burns," and "severe irritation and chemical burns" to the eyes. Energizer cautions that when cleaning up "leaking batteries," "room ventilation may be required" and consumers should "wear safety glasses with side shields" and "use neoprene or natural rubber gloves."[10]

---

[9]     Energizer, *Product Safety Data Sheet*, available at http://data.energizer.com/PDFs/alkalinecylindrical_psds.pdf (last visited July 19, 2016).
[10]     *Id.*

31.     Even Samsung previously warned consumers of the dangers leaking batteries for one of its other remote controls, stating that "the battery may become damaged or it may cause fire, personal injury or damage due to leakage of the internal liquid."[11] Unfortunately, Samsung doesn't warn of the dangers of their defective Qwerty Remotes, nor does Samsung disclose to consumers the remote's defect, described above (the "Battery Defect"). As a result, consumers are unaware that Samsung's remotes "may cause fire, personal injury or damage due to leakage of the internal liquid" of the batteries.

**III.     Consumers are Concerned About Samsung's Hazardous and Defective Remotes.**

32.     Owners of Qwerty Remotes that have manifested the Battery Defect have turned to the internet to voice their displeasure. Reports of "sizzling," "popping," and "leaking" batteries are legion.[12] And because "there is no viable alternative to this remote to be able to use

---

[11]     *LFD Display User Manual, ED65C ED75C*,
http://downloadcenter.samsung.com/content/UM/201306/20130612200837441/BN46-EDC_ENG.pdf (last visited July 19, 2016).

[12]     *Amazon.com: Big Family "Gamer. Digital Native and Business Leader." 's review of Samsung Remote Control - BN59-01134B*,
http://www.amazon.com/review/R1P3J932MVNYE4/ref=cm_cr_rdp_perm (last visited July 19, 2016) (commenter noting, "I really can't believe [there's] no recall. How dangerous if we had kids. Battery acid got all over the place. So frustrating, AND this was the second time it happened! $160 to replace it!"). Undoubtedly, Samsung is aware of these complaints—recently, one of Samsung's related corporate entities was fined by a regulatory body for manipulating online comments at sites similar to Amazon.com, suggesting that Samsung regularly monitors such forums. *See BBC News - Samsung probed in Taiwan over 'fake web reviews'*, http://www.bbc.com/news/technology-22166606 (last visited July 19, 2016).

Moreover, throughout 2011—the year before Plaintiff Sherwin purchased her television containing the Qwerty Remote—Samsung employed "online brand ambassadors" to find "anything specific that people didn't like about" the Qwerty Remote and to "pass[] up that feedback" to others at Samsung. *The new 8000 series plasma for 2011 - CNET Samsung Forums*, forums.cnet.com/7723-13973_102-525170/the-new-8000-series-plasma-for-2011/?tag=rb_content;contentMain (last visited Feb. 26, 2015) (Notably, Samsung has seemingly edited its forum post on this topic to remove the text cited here. As such, a true and accurate copy of the CNET forum post is attached hereto as Exhibit A); *see also Block, Justin Resume*, http://www.slideshare.net/JustinBlock/block-justin-resume-43191565 (last visited Feb. 26, 2015) (The resume cited here has been removed. A true and accurate copy of the Justin

all the functions of [their] Samsung TV[s] easily,"[13] consumers are stuck with broken remotes and TVs with impaired functionality.

33.    For example, one reviewer states that a Qwerty Remote that came with her Samsung 55-inch TV stopped working so she "went to change the batteries (usual) & upon ejecting the batteries, there was battery acid all over everything (not so usual!). After cleaning everything up & putting all new batteries in, the remote worked for a few days, then it stopped & everything was covered in battery acid again."[14]

34.    Another consumer wrote that the Qwerty Remote "used up batteries in a day or two and I was only using the remote part [*i.e.*, the infrared side of the remote]. After about three weeks I woke up one morning and tried to turn on the TV. The batteries were dead. I was going to put in new batteries when I discovered that the batteries were very hot. *They were hot enough to melt the battery holder.*"[15]

35.    Indeed, another consumer confirmed, "The remote control is a hazard! I went to use it and [] found that the batteries were fried, so I purchased a new battery tray and it *fried the*

---

Block resume is attached hereto as Exhibit B) (stating that brand ambassadors, employed from at least 2009 to 2013, "represented Samsung … through online forums, retailers, social media, and client-specific websites," where they would "responded to customer inquiries" and "generate[] executive level analytic reports" of their findings). As such, these brand ambassadors likely saw complaints in popular online forums made in 2011 (prior to when Plaintiff purchased her television) including complaints of "exploding" batteries. *See Official Samsung UNXXD7000 Owners' Thread - AVS | Home Theater Discussions And Reviews*, http://www.avsforum.com/forum/166-lcd-flat-panel-displays/1322234-official-samsung-unxxd7000-owners-thread.html (last visited July 19, 2016) (complaint from Mar. 16, 2011).
[13]    *Amazon.com: optimizeyourvideo's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/R3MAR8VW1F3RKI/ref=cm_cr_pr_perm?ie=UTF8&ASIN=B005DNSCWM (last visited July 19, 2016).
[14]    *Amazon.com: Laura Taeger's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/RB10FZNBUGJJ1/ref=cm_cr_pr_perm?ie=UTF8&ASIN=B005DNSCWM (last visited July 19, 2016).
[15]    *Amazon.com: RONALD G GOODMAN's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/R14OF48TSTIOLR/ref=cm_cr_rdp_perm (last visited July 19, 2016) (emphasis added).

*batteries again and burnt the new tray*!! I have never had a remote that fry's batteries. This is extremely dangerous! Could injure your hands or start a fire! Samsung won't stand behind their products! Consider yourself warned! (Amazon makes me give a star rating, but they don't even deserve one star!)"[16]

36.     And in a review titled "EXPLODED," a consumer reports, "All reviews are very accurate. My remote just imploded. We heard a loud "POP". I opened the battery compartment and there was battery juice everywhere and the batteries were extremely hot! … This could have caused a fire in my home!"[17]

### IV.     Plaintiff Sherwin's Experience with her Defective Remote.

37.     On February 12, 2012, Plaintiff Sherwin purchased a Samsung UN55D7000 55-inch Smart TV from an HHGregg near her home at a cost of 1,624.99 plus tax.

38.     The model of Samsung Smart TV Plaintiff purchased contained a Qwerty Remote, for which she paid a premium of approximately $300. The inclusion of the Qwerty Remote was a material reason Plaintiff purchased the UN55D7000 television instead of other alternatives. Specifically, Plaintiff Sherwin was drawn to the television's Qwerty Remote because its keyboard would allow her to easily browse the internet on her TV and other apps that she could access using the Qwerty Remote.

39.     After Plaintiff's television arrived, she began to use the TV and the Qwerty

---

[16]     *Amazon.com: Robert Chien's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/RRR2E3CL4FWEO/ref=cm_cr_rdp_perm (last visited July 19, 2016) (emphasis added); *see also Amazon.com: Michelle's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/R2Y7DT666LSGUW/ref=cm _cr_rdp_perm?ie=UTF8&ASIN=B005DNSCWM (last visited July 19, 2016) ("[W]e noticed inside the battery housing case, either the battery or the remote got so hot that it actually melted the plastic and covered the metal conductors; needless to say it has not worked again.").
[17]     *Amazon.com: USREALTOR's review of Samsung Remote Control - BN59-01134B*, http://www.amazon.com/review/R2U23I9Y2LTYKM/ref=cm_cr_pr_perm?ie=UTF8&ASIN=B0 05DNSCWM (last visited July 19, 2016).

Remote to, for example, browse the internet on her television using its QWERTY keyboard. However, the Qwerty Remote's batteries quickly depleted after only a few days of use. Thereafter, Plaintiff had to regularly replace the remote's batteries with new ones after low to moderate use of the remote and even after some time when she did not use the remote at all.

40.     Then, sometime after June 2013, Plaintiff installed another set of fresh batteries in the remote, but soon after, the batteries in the remote began to leak battery acid (a hazardous substance) and the remote stopped working. Plaintiff used protective gloves to dispose of the leaking batteries and then placed the remote in an isolated area since leaking battery acid is dangerous if touched or consumed.

41.     Then, in November 2014, after using remotes that only gave her basic control of her Smart TV (i.e., an infrared remote), Plaintiff purchased a replacement Qwerty Remote for $144.25 from a local retailer. Plaintiff purchased the replacement Qwerty Remote because no other remote was capable of controlling the Samsung TV she purchased while providing access to all of the premium features of the TV she paid for. Nevertheless, soon after purchasing the remote and using it with her Samsung TV, the replacement remote depleted batteries as quickly as the original remote.

42.     Then, in April 2015, the batteries inside the new replacement Qwerty Remote severely corroded about one week after putting in a new set of batteries.

43.     As it stands, Plaintiff has suffered damages as the result of Defendant's defective Qwerty Remote in the form of money paid to purchase a replacement remote and in the premium she paid for her Samsung UN55D7000 55-inch Smart TV that she lost out on due to the dysfunctional remote.

## CLASS ALLEGATIONS

44.     **Class Definition:** Plaintiff Sherwin brings this action pursuant to Federal Rule of

Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a class and subclass of

similarly situated individuals defined as follows (collectively, the "Classes"):

> **Class**: All individuals in the United States who purchased a BN59-01134B remote
> control or a Samsung television packaged with a BN59-01134B remote control.

> **Subclass**: All residents in Illinois, California, Florida, Massachusetts, Michigan,
> Minnesota, Missouri, New Jersey, New York, and Washington who purchased a
> BN59-01134B remote control or a Samsung television packaged with a BN59-
> 01134B remote control.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over

this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and its current or former employees, officers and directors; (3) persons who properly

execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this

matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any

such excluded persons.

45.     **Numerosity**: The exact number of members of the Classes is unknown and is not

available to Plaintiff at this time, but individual joinder in this case is impracticable. The Classes

likely consist of thousands of individuals and other entities. Members of the Classes can be

easily identified through Defendant's records.

46.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the other members of the Classes, and those questions

predominate over any questions that may affect individual members of the Classes. Common

questions for the Classes include but are not limited to the following:

a)      Whether the Qwerty Remotes suffer from the Battery Defect;

b)      Whether the Battery Defect constitutes an unreasonable safety risk;

c)      Whether (and for how long) Defendant knew about the Battery Defect;

d)      Whether Defendant had and continues to have a duty to disclose the existence of the Battery Defect;

e)      Whether Defendant's conduct constitutes a violation of the ICFA; and

f)      Whether Defendant has been unjustly enriched.

47.      **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and members of the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

48.      **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes, and she has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

49.      **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes each as a whole. Defendant's policies challenged herein

15

apply and affect the members of the Classes uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the whole of each the Classes, not on facts or law applicable only to Plaintiff.

50. **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

### FIRST CAUSE OF ACTION
### Restitution/Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

52. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53. Defendant has received and retained money belonging to Plaintiff and the Class

members as a result of its sale of Smart TVs with the Defective Remotes that, as a result of

premature failure, render the Smart TVs' paid-for advanced features unusable. Defendant profits

from each individual sale of their Smart TVs bundled with the Defective Remotes.

54.     Defendant appreciates or has knowledge of such benefit.

55.     Under principles of equity and good conscience, Defendant should not be

permitted to retain the money belonging to Plaintiff and members of the Class, which Defendant

has unjustly received as a result of its unlawful actions described herein.

56.     Plaintiff and other members of the Class suffered damages as a direct result of

Defendant's conduct.

57.     Plaintiff, on her own behalf, and on behalf of the Class, seeks restitution for

Defendant's unlawful conduct, as well as interest and attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS**
**§§ 505/1, *et seq.*, and Substantially Similar Laws of California, Florida, Massachusetts,**
**Michigan, Minnesota, Missouri, New Jersey, New York, and Washington**
**(On Behalf of Plaintiff and the Subclass)**

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

59.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

(815 ILCS §§ 505/1, *et seq.*) protects both consumers and competitors by promoting fair

competition in commercial markets for goods and services. Similar statutes, identical in their

material respects, are in effect in California, Florida, Massachusetts, Michigan, Minnesota,

Missouri, New Jersey, New York, and Washington (collectively, "Similar Statutes").

60.     The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices

including the employment of any deception, fraud, false pretense, false promise, false

advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

61.     The ICFA applies to Defendant's actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

62.     Defendant is a "person" as defined under section 505/1(c) of the ICFA.

63.     Plaintiff and each member of the Subclass are "consumers" as defined under section 505/1(e) of the ICFA.

64.     Defendant's Smart TVs and bundled Defective Remotes are "merchandise" within the meaning of section 505/1(b) and the sale of its Smart TVs and bundled Defective Remotes is considered "trade" or "commerce" under the ICFA.

65.     Defendant violated the ICFA by failing to disclose to Plaintiff and the Subclass the material fact that the Smart TVs' Qwerty Remotes were defective and would lead to the leakage of hazardous substances.

66.     Defendant was aware that the Qwerty Remotes were defect and cause batteries to leak hazardous substances prior to when Plaintiff purchased her Smart TV bundled with the Qwerty Remote. Once Defendant was aware of the Defective Remotes, consumers (such as Plaintiff) were entitled to disclosure of that fact because a significant risk of leaking hazardous substances would be a material fact in a consumer's decision-making process, and, without Defendant's disclosure consumers would not know that there is such a risk.

67.     Moreover, the Qwerty Remote and the ability to safely use the Remote were material selling points of the Smart TVs and a primary reason to purchase Defendant's Smart TVs over other alternative televisions. And, Plaintiff and members of the Subclass paid a premium for the Smart TVs bundled with the Qwerty Remotes.

68. Samsung intended that Plaintiff and the members of the Subclass rely on its deception and concealment, suppression, and/or omission of the material fact to purchase Defendant's Smart TV bundled with the Qwerty Remotes.

69. Specifically, at the time, Defendant marketed materially similar Smart TVs without the Qwerty Remotes at a lower price than it marketed its Smart TVs bundled with the Qwerty Remotes.[18]

70. Had Plaintiff and the Subclass known that the Defendant's Qwerty Remotes were defective, they would not have purchased Defendant's Smart TVs bundled with the Remotes, or they would have paid less for them (e.g., they would have not paid a premium for the Qwerty Remote and the features it allowed).

71. As a direct and proximate result of Defendant's violation of the ICFA and Similar Statutes Plaintiff and each Subclass member have suffered harm in the form of monies paid for Defendant's Smart TVs bundled with the Qwerty Remotes in that they paid more for Defendant's Smart TVs than they would have had they known the true characteristics of the Qwerty Remote (i.e., they paid a premium for the Qwerty Remote). Plaintiff, on behalf of herself and the Subclass, seeks an order (1) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (2) requiring Defendant to restore to Plaintiff and each Subclass member any money acquired by means of unfair competition (restitution).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kim Sherwin on behalf of herself and the Classes respectfully requests that the Court enter an order:

A. Certifying this case as a class action on behalf of the Classes defined above,

---

[18] *See* Section 1.

appointing Kim Sherwin as representative of the Classes, and appointing her counsel as class counsel;

      B.     Declaring that Defendant's actions, as set out above, violate the ICFA, Similar Statutes, and constitutes unjust enrichment;

      C.     Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Classes in an amount to be determined at trial;

      D.     Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

      E.     Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

      F.     Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

      G.     Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: July 25, 2016

      **KIM SHERWIN**, individually and on behalf of all others similarly situated,
By: /s/ J. Dominick Larry

One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor

Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman (*Pro hac vice* to be sought)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 South Biscayne Blvd, 28th Floor
Miami, Florida
Tel: 877.333.9427
Fax: 888.498.8946